IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BYRON ALTON BOWIE, JR.,

    Plaintiff,

v.

R. SHANE WEBER,
JORDAN TICHNELL,
GARY SINDY,
BRENT McKENZIE,

    Defendants.

Civil Action No.: JRR-24-3480

**MEMORANDUM OPINION**

This civil rights suit was initiated by self-represented[1] Plaintiff Byron Alton Bowie, Jr. when he filed a Motion for Temporary Restraining Order seeking placement on protective custody at Western Correctional Institution in Cumberland, Maryland. ECF No. 1. This Court issued an Order requiring counsel for the Division of Correction to show cause why the injunctive relief sought by Bowie should not be granted and directed Bowie to file an Amended Complaint. ECF No. 3. Bowie filed an Amended Complaint[2] and counsel filed a Response to the Order to Show Cause.[3] ECF Nos. 5 and 9. For the reasons discussed below, the Motion for Temporary Restraining Order will be denied, and the Amended Complaint dismissed.

    **I.**    **Background**

In his Amended Complaint, Bowie alleges he was previously incarcerated in the Maryland Division of Correction ("DOC") and was released from custody on June 2, 2022. ECF No. 5 at 4. At the time of his release, Bowie had been on protective custody ("PC") due to having a "gang

---

[1] The Clerk will be directed to correct the docket to reflect that Plaintiff is self-represented.
[2] Bowie also filed a Motion to Proceed in Forma Pauperis (ECF No. 6), which shall be granted.
[3] The Motion for Extension of Time filed by counsel (ECF No. 8) shall be granted.

hit" on his life from the Black Guerilla Family ("BGF") prison gang. *Id*. He explains that he was assaulted at Jessup Correctional Institution ("JCI") by members of the BGF because he failed to carry out an order when he was a member of the BGF. *Id*. As a former member, Bowie was "assaulted and threatened" and "spent [the] majority of [his] time placed on protective custody as a result of fearing for [his] safety" due to the "stronghold" the BGF has on the DOC. *Id*. Bowie returned to DOC custody after reoffending on November 23, 2023. ECF No. 1 at 2.

On October 22, 2024, Bowie arrived at WCI and was placed in general population where he felt his life was in grave danger. ECF No. 5 at 4. He states that he immediately notified "duty staff" and explained his situation to the duty Lieutenant. *Id*. at 5. The duty Lieutenant placed Bowie on administrative segregation pending investigation. *Id*.

On October 23, 2024, Bowie was seen by a Case Management Review Board consisting of five staff members to whom he explained why he needed to be on protective custody. *Id*. The Review Board informed Bowie that they had "no knowledge" of him ever being on protective custody for the reason complained of and suggested that he be assigned to general population. *Id*. He alleges that the Review Board "suggests that I should be placed in harms [sic] way and assaulted here before they'll consider placing me back up protective custody despite pleading for protection." *Id*. The Review Board asked Bowie to provide proof that he had been on PC prior to being released in 2022. *Id*.

Bowie states that he was assaulted on December 23, 1996, and required hospitalization as a result. *Id*. Following that assault, he remained on PC until his release. *Id*. In addition to the injunctive relief sought in his initial pleading, Bowie seeks monetary damages. *Id*.

In the Response to Show Cause, Counsel for the DOC verify the historical basis, with very little variance of the facts, for Bowie's concerns regarding his safety. ECF No. 9. Jordan Tichnell

2

explains in a declaration that when Bowie was first committed to the DOC in 1992 he was affiliated with a Security Threat Group ("STG") and, at some point, dropped the affiliation. ECF No. 9-1 at ¶¶ 4, 5. In 1998, Bowie was stabbed by another inmate and claimed that it was due to his disaffiliation from the STG. *Id*. at ¶ 6. Because he feared there was a "hit" on his life from the STG, he was placed on PC. *Id*.

On February 9, 2007, Bowie was transferred to Maryland Correctional Institution Jessup ("MCIJ") and assigned to general population because it was determined he no longer needed PC. *Id*. at ¶ 7. Bowie expressed fear for his safety while at MCIJ; he was placed on administrative segregation and transferred to WCI on February 28, 2007. *Id*. at ¶¶ 7, 8. Upon his arrival at WCI, Bowie said his life was again endangered by an STG threat to his life. *Id*. at ¶ 8. According to Tichnell's review of the records, the investigation into Bowie's claims was "extremely vague." *Id*. Nevertheless, Bowie was transferred to Eastern Correctional Institution ("ECI") on November 6, 2008. *Id*.

Bowie did not return to WCI until he was recommitted to the DOC in 2024. ECF No. 9-1 at ¶ 9. On October 22, 2024, when Bowie arrived at WCI, he told correctional staff about his issues during his prior incarceration and his fear in connection with the STG hit that may still remain on his life. *Id*. Bowie was placed on administrative segregation pending investigation and Lt. Beal was assigned to investigate Bowie's claims to determine if PC was warranted. *Id*.

During the investigation it was confirmed by WCI intelligence staff that Bowie had never been registered on either of two STG tracking systems. *Id*. at ¶ 11. When known leaders of the BGF were contacted by WCI intelligence, they said they did not know Bowie. *Id*. Bowie also has no documented enemies at WCI. *Id*. The investigation determined that PC was "unnecessary, but available." *Id*. On December 23, 2024, the Warden approved Bowie's request for placement on

PC, he was removed from administrative segregation and was reassigned to a cell in Housing Unit 5 on PC. *Id*. at ¶ 12.

Shortly after the Response to Show Cause was filed, Bowie filed a Motion to Withdraw Without Prejudice. ECF No. 10. In that motion, Bowie states that because he was placed on PC on December 26, 2024, "to resolve this urgent matter," he requests withdrawal of the case without prejudice. *Id*. The motion appears to seek voluntary dismissal; however, Bowie also filed a Response to Defendants Response to Order to Show Cause that appears to indicate his intention to continue with this action. ECF No. 11. Further, in that motion, Bowie states his disbelief that STG leadership would be honest with prison intelligence officers about whether they knew who he was or whether they intended to do him harm. *Id*. at 1. He avers that he wants this Court to issue an injunction. *Id*. at 2. Assuming Bowie's later-filed paper is to be credited, the Court addresses the merits of his request for injunctive relief and screens his Eighth Amendment claim as required by 28 U.S.C. §§ 1915, 1915A. As set forth below, Bowie's Motion to Withdraw will be denied as moot.

## II.    Injunctive Relief

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking injunctive relief must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent issuance of the injunction; (3) that the balance of equities tips in the party's favor; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As

to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions where exceptional and compelling circumstances are present. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). Additionally, under 18 U.S.C. § 3626(a)(2):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

Where, as here, the requested injunctive relief has already been provided, the request for injunctive relief is moot. Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242, 242 (1937); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Where injunctive or

5

declaratory relief is requested in an inmate's complaint, it is possible for events subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use. *See, e.g.*, *Tawwab v. Metz*, 554 F.2d 22, 23-24 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413 (9th Cir. 1976); *Locke v. Bd. of Public Instruction*, 499 F.2d 359 (5th Cir. 1974); *Wilkinson v. Skinner*, 462 F.2d 670 (2d Cir. 1972); *Uzzell v. Friday*, 401 F. Supp. 775 (M.D.N.C. 1975), *aff'd in pertinent part*, 547 F.2d 801 (4th Cir. 1977); *Rappaport v. Little League Baseball, Inc.*, 65 F.R.D. 545, 547-48 (D. Del. 1975). Given Bowie's current assignment to PC, his request for injunctive relief is moot and, therefore, will be denied.

### III. Eighth Amendment Claim

Left for consideration is Bowie's claim for damages. Sections 1915(e)(2)(B) and 1915A of 28 U.S.C. require the Court to conduct an initial screening of this complaint and to dismiss a complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also Lomax v. Ortiz-Marquez,* 590 U.S. ___, 140 S.Ct. 1721 (2020). Thus, if Bowie's Amended Complaint fails to state a claim, it is subject to dismissal.

To sustain an Eighth Amendment claim for failure to protect from violence, Bowie must plausibly allege that Defendants exhibited deliberate or callous indifference to a specific known

risk of harm. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it

violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which a reasonable inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128, *see also Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024) (finding officer who questioned prisoner on housing unit publicly and loudly about why he wanted protective custody may have knowingly exacerbated the danger making response unreasonable).

Actual knowledge of a substantial risk does not, alone, impose liability. Where prison officials responded reasonably to a risk, they may be found free from liability. *Farmer*, 511 U.S. at 844. Where prison officials conclude they did not have sufficient information to carry out an appropriate investigation of a prisoner-plaintiff's claim that his life was endangered, they have not "*consciously disregarded*" the complained-of risks. *Ford*, 108 F.4th at 231 (noting plaintiff had not provided names of prisoners who represented a threat and prison officials did not recognize their responses were inappropriate) (emphasis in original).

Bowie's claim that his life is being threatened by the BGF based on past events has been investigated by prison officials. According to the undisputed record, tt was not consciously disregarded. Further, even though there was scant evidence in support of Bowie's claim that his life was or is endangered by this (or any other particular) STG, he has been placed on PC per his request. Bowie was immediately removed from general population when he arrived at WCI on October 22, 2024, and when the investigation was completed, he was placed on PC. It is difficult to imagine what more these prison officials could have done to accommodate Bowie's concerns.

The Eighth Amendment claim fails and must be dismissed. A separate Order follows.

March 4, 2025                                      /S/
                                                   _____
                                                   Julie R. Rubin
                                                   United States District Judge